UNITED STATES *v.* CALHOUN, ROBBINS & CO. (No. 3588)[1]

United States Court of Customs and Patent Appeals, May 29, 1933

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*William H. Fox* and *Samuel Isenschmid* of counsel) for appellee.

[Oral argument February 10, 1933, by Mr Lawrence and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, sustaining a protest by appellee against a classification by the collector of customs of merchandise, referred to by the name of "strick-trick" (sometimes called a "knitting set"), as a toy, duty being assessed at 70 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930.

Appellee insists that the merchandise is properly classifiable for duty at 33⅓ per centum ad valorem under paragraph 412 of said act, as "a manufacture composed in chief value of wood."

The pertinent portions of the competing paragraphs are:

PAR. 1513. * * * toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for

---

[1] T. D. 46495.

physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

PAR. 412. * * * manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

In the invoice the merchandise is termed "workboxes."

Collective Exhibit 1 is a cardboard box in which is contained a wooden form about three inches in length, shaped so that, by painting and dotting, it crudely resembles the trunk and head of a child, having a hat with sharply down-turned brim upon the head. In this "hat," which is depressed on top, there are set four metal pins less than half an inch in length, arranged so that a line drawn around them would be in the shape of a rectangle. A hole about an eighth of an inch in diameter extends through the center of the form from end to end. Also in the box there is a large-sized needle with a wooden handle, two balls of colored woolen yarn, and a booklet giving directions for use, illustrated with figures showing different positions of the parts and of the hands when "knitting" or manipulating the threads through the form and around the pins with the needle. According to the booklet, there are different sizes of these devices, No. I being designated "For Children and Grown-ups," and No. II "For Grown-ups."

It was stipulated by counsel that the outfit is an entirety, composed in chief value of wood, and that Exhibit 1 is chiefly used by children over six years of age.

The court below declared:

It is evident that use is the sole criterion by which merchandise of this character can be classified.

That is a correct statement of the law, with respect to paragraph 1513, *supra*, if it be understood that the use referred to is chief use.

The definition of "toy" as given in paragraph 1513 of the Tariff Act of 1930, *supra*, is, "an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development."

The presumption of correctness applying to the collector's classification, of course, implies that he found the articles to be "chiefly used for the amusement of children," and the burden rests upon the protestant of overcoming the presumption by competent evidence.

The testimony of one witness called by protestant was taken and is to be considered in connection with the articles themselves, as represented by collective Exhibit 1. *United States v. Bernard, Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029. There are also illustrative exhibits A and B which respectively show articles made from the yarns after they have been "knitted." Illustrative Exhibit A is a

small mat for use, according to the record, as a hot plate mat, or as a mat to put under a flower pot, and illustrative Exhibit B consists of small articles for use as ornaments or decorations on hats, sweaters, and the like.

The witness examined was a Miss Bivona, a saleslady for the importer. She testified that she used such or similar articles when she was a child, and that she had recently "made up a few samples" with one; that the device is simple to operate and "not very complicated, as long as you get the right idea"; that the operation produced "a string"; that the operation could not be done with the fingers alone but required the "needle or something that will catch the wool and bring it over the top"; and that from the knitted strings there could be made "a little rug," "flowers, and little slippers," and "different items" by sewing the finished strings together with needle and thread. The witness explained, and demonstrated, the operation to the trial court, and identified and described the articles comprised in illustrative Exhibits A and B as having been made from the strings produced upon the "strick-trick." The booklet included in Exhibit 1 was also explained and it was stated that a booklet was always sold with the outfit.

No testimony was taken on behalf of the Government.

The court below, after quoting much of the testimony verbatim, and after describing the exhibits and the various products shown, said:

We are satisfied plaintiffs [Appellee] have made out an uncontradicted, unrebutted *prima facie* case, and that they are therefore entitled to recover.

We are in agreement with the conclusion reached by the Customs Court, upon the record presented.

We are not unmindful of the fact that the stipulation states that the merchandise is "chiefly used *by* children over six years of age." (Italics ours.) In construing the language of the toy paragraph, *supra*, however, its full import is not determined in the ascertainment of *by* whom an article is chiefly used; it is necessary also to consider *for* what purpose it is used. So far as the statute is concerned, an article might be a toy without ever being actually used by a child, but, to be one, it must be chiefly used *for* the amusement of children.

It may be that a certain amusement is derived by a child from its use of the articles at issue, but, whether used by a child or by an adult, the thing produced, in its normal and intelligent use, is an article of utility, and it seems to us that, upon the whole record in the case, the use in production of such an article—the knitted string—outweighs what we think may be designated as the probable incidental amusement.

We have examined the authorities relied upon by counsel for the Government, but we find none contrary to the views here expressed. A

.. 

review of them is not deemed essential. Many of them are cited with appropriate comment in the case of *Marshall Field & Co.* v. *United States*, 20 C. C. P. A. (Customs) 225, T. D. 46037.

The judgment of the United States Customs Court is affirmed.